COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-465-CV

 

 

KENNETH J. MAGNUSON                                                      APPELLANT

 

                                                   V.

 

CITIBANK (SOUTH DAKOTA) N.A.                                            APPELLEE

 

                                              ------------

 

          FROM COUNTY
COURT AT LAW NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant Kenneth J. Magnuson appeals from a
summary judgment awarding Appellee Citibank (South Dakota), N.A. damages of
$18,815.02, plus $4,327.45 in attorney=s fees,
$1,500 in additional attorney=s fees
in the event of an unsuccessful appeal by Magnuson to the court of appeals, and
$2,500 in additional attorney=s fees
in the event of an unsuccessful appeal by Magnuson to the Texas Supreme
Court.  Because we hold that the trial
court did not err by granting summary judgment for Citibank, we affirm.

I.  Facts
and Procedural History

On June 18, 2004, Citibank sued Magnuson on
claims of account stated, breach of contract, and quantum meruit for the unpaid
balance on Magnuson=s credit card account after he
stopped paying on the account.  Magnuson
filed an answer pro se.  On September 20,
2004, Citibank filed a motion for summary judgment.  Magnuson filed a response.  Citibank asked for a hearing by submission,
but Magnuson appeared in person on the hearing date.  The trial court denied Citibank=s motion
without prejudice and without considering the merits because Citibank did not
appear.








On November 7, 2005, Citibank filed a second
traditional motion for summary judgment and submitted in support of its motion
the affidavit of Crystal Britt, its representative, stating among other things
that demand had been made on Magnuson more than thirty days prior to suit.  Citibank also attached copies of the card
agreement, Magnuson=s account application, and
billing records.  Magnuson filed a
verified response but did not attach any evidence in support.  In his response, he argued that the
application included with Citibank=s
evidence is illegible and therefore no contract exists and that because the
cardholder agreement does not contain his signature, the conditions therein are
not a part of any alleged agreement between the parties. He also asserted that
no contract was signed by Citibank.

Magnuson also filed a motion to show authority
under Rule 12 of the Texas Rules of Civil Procedure.[2]  Citibank filed a response, attaching an
affidavit of a vice president for Citicorp Credit Services, Inc., in which the
vice president avers that Citicorp is the servicer for Citibank, that her
duties include supervising attorneys retained to collect debts on Citibank=s
behalf, and that Citicorp retained the acting counsel for the proceedings
against Magnuson.








Both motions were set for a hearing on February
3, 2006.  Citibank had requested a
hearing by submission on its summary judgment motion, and Citibank=s
attorney did not appear in person on that date. 
The trial court stated that it intended to hold a hearing on the Rule 12
motion and asked Magnuson to offer evidence that Citibank was served with
notice of the hearing.  Magnuson did not
have such evidence with him at the hearing. 
The trial court then offered to waive the in-person hearing and base its
ruling on the pleadings then on file. 
Magnuson declined the offer and suggested that the trial court swear him
in and allow him to testify that he served Citibank with notice.  The trial court instead allowed Magnuson the
opportunity to supplement the file with the confirmation and told Magnuson
that, once the evidence was submitted, he would consider it.  Magnuson did not supplement with proof of
notice.








The trial court subsequently set a hearing date
of June 14, 2006, for the hearing on the motion for summary judgment and on
Magnuson=s Rule
12 motion.  Magnuson did not appear, and
the trial court orally dismissed the Rule 12 motion for failure to
prosecute.  The trial court also granted
Citibank=s
summary judgment motion in a written order without stating the grounds.  On November 22, 2006, the trial court entered
a written order denying Magnuson=s Rule
12 motion.  Magnuson filed a motion for
new trial, including a motion for reconsideration on his Rule 12 motion, in
which he alleged that by filing an answer to his Rule 12 motion, Citibank made
a judicial admission that it had notice of the February 2006 hearing on the
motion.  He further argued that the trial
court had violated Magnuson=s due
process rights by failing to sign orders Magnuson had presented to it after the
court granted summary judgment.  Magnuson
also alleged that the June 2006 hearing was essentially a rehearing on the Rule
12 motion, that the rehearing was granted without proper motion, and that by
granting the rehearing the trial court violated the Texas Code of Judicial
Conduct, held Magnuson to a higher standard than opposing counsel, and violated
Magnuson=s due
process and equal protection rights.  The
trial court denied the motion on December 20, 2006.

II. 
Analysis

Magnuson presents nine issues on appeal.  We begin with Magnuson=s second
and third issues, which relate to his Rule 12 motion.  In his second issue, he asks, AIf a
hearing is scheduled and the [m]ovant appears and the nonmovant fails to appear
but files a written answer which is insufficient as a matter of law, has the
movant [sic] waived all objections to said hearing?@  In his third issue, he questions whether the
trial court has a duty to provide relief for the party that appeared.

In the arguments section of Magnuson=s brief,
he states,

Notice was given and
received by the opposing counsel.  Trial
judge abused discretion in not signing order after CITIBANK failed to
appear.  All elements of the requirements
of the rule were pleaded.  CITIBANK
answered with an affidavit of their representation.  However, the rule requires a hearing in order
to allow cross‑examination of witnesses as to the authentication and
source of the documents.  Without the
hearing[,] self‑serving affidavits would replace evidentiary
standards.  It was not within the trial
court[=]s discretion not to hear
a motion that invoked a rule that protected the rights of litigants against
barratry or frivolous pleadings.  It is
the contention of the Appellant that the attorneys acting to represent CITIBANK
are actually third party debt [collectors] which would equate to fraud upon the
court.

 

This paragraph constitutes the extent of his argument for these issues
in the AArguments@ section
of his brief.  








We
consider together Magnuson=s
contentions that he was entitled to have his motion granted because Citibank
did not appear in person on February 3, 2006, and that by failing to appear,
Citibank waived its objections to the hearing. 
The motion was first set for hearing on February 3, 2006.  On that date, Magnuson was unable to show
that Citibank had notice of the hearing. 
As the trial court attempted to explain to Magnuson, notice that a
motion has been filed is not notice of the setting of a hearing on the
motion.  Citibank clearly did know that
Magnuson had filed a Rule 12 motion because, as Magnuson correctly points out,
Citibank filed a response.  But that does
not signify that Citibank had any notice of when the hearing on the
motion would be held.  

Rule 21
of the Texas Rules of Civil Procedure provides that 

[a]n application to the
court for an order and notice of any hearing thereon, not presented
during a hearing or trial, shall be served upon all other parties not less than
three days before the time specified for the hearing unless otherwise provided
by these rules or shortened by the court.[3]

 








The
local rules of the trial court provide that A[u]pon
receiving the date and time of hearing [as scheduled by the court coordinator],
the moving party shall immediately notify all other parties in writing as to
the date, time, and subject matter of the hearing.@[4] 

A trial
court=s final
dismissal of a plaintiff's cause of action without proper notice is an abuse of
discretion.[5]  Thus, the trial court did not abuse its
discretion by requiring that Magnuson show proof of service on Citibank before
granting his motion and striking Citibank=s
pleadings.  It is irrelevant for purposes
of Magnuson=s issue whether Magnuson later
established that he had served Citibank with notice of the hearing date because
on the date of the hearing, the time at which Magnuson alleges the trial
court erred, Magnuson offered no evidence that Citibank had notice of the
hearing.  Without proof of service on
Citibank, Magnuson was not entitled to any sort of default ruling on his
motion, and Citibank did not waive objections to the hearing.[6]








Magnuson
makes a related argument in the AConclusion@ section
of his brief.  There he contends that the
trial court created a heightened pleading standard for him, a nonattorney, when
the trial court failed to grant his Rule 12 motion on February 3, 2006, after
Citibank did not appear at the hearing. 
He argues that this heightened standard violates due process and equal
protection. 

Magnuson
cites no authority for this argument.[7]  Further, as we discussed above (and as the
trial court attempted to explain to him on that date), there is a difference
between having notice that a motion has been filed with the trial court and
having notice of the date of a hearing on that motion.  The trial court did not create a heightened
pleadings standard by requiring Magnuson to offer such evidence; rather, the
trial court applied the Texas Rules of Civil Procedure.[8]  








We note
that the trial court set a hearing date for June 14, 2006, and that Magnuson
did not appear.  It was Magnuson=s
responsibility to diligently pursue his motion, and by failing to show up at
the hearing, he faced dismissal of his motion.[9]  Accordingly, the trial court dismissed the
motion for want of prosecution, rather than ruling on the merits either with or
without an oral hearing, and Magnuson does not challenge the propriety of that
dismissal on appeal.  Thus, the question
of whether Rule 12 requires an oral hearing before a ruling on the merits may
be issued is irrelevant to this appeal, and we do not consider it.[10]  Accordingly, we overrule issues two and
three.

In his
first issue, Magnuson asks, AMay a
litigant file a second Motion for Summary Judgment without any change in their
pleadings?@ In issue four, Magnuson asks,
does Athe
opposing party have the authority to reset a hearing or in effect have a
rehearing of a motion filed by opposing counsel without filing a motion to
rehear?@  Issue five relates to the trial court=s grant
of Citibank=s second motion for summary
judgment and asks, ADoes any court have the ability
to rule in favor of a summary judgment motion that had been previously denied?@  Issue six questions whether a trial court has
discretion to grant a summary judgment motion if the nonmoving party fails to
appear on the date set for the summary judgment hearing.  Magnuson makes no argument in support of
these issues; therefore, they present nothing for this court to review.[11]  Accordingly, we overrule issues one, four,
five, and six as inadequately briefed.[12]








Issues
seven through nine relate to Magnuson=s access
to reporter=s records under Rule 145 of the
Texas Rules of Civil Procedure and Rule 20.1 of the Texas Rules of Appellate
Procedure for the purpose of proving a motion for new trial.[13]  He states in his brief that he filed a motion
for new trial, and Citibank=s
counsel argued in response that there was no hearing on the Rule 12 motion Aand that
no transcript has been provided to demonstrate that a hearing had in fact
occurred.@ 
Magnuson then notes that he is indigent and that he filed Athe
necessary documents@ under Rule 145 and Rule 20.1 to
prove his indigency, and that he had made a request for Athe
transcript to provide evidence of the hearing and the opposing parties[>]
absences from that hearing,@ which
the trial court denied.  With that
preface, Magnuson asks,

Seven:  Does the lack of access to an
indigent to hearing transcripts in rehearings or in a New Trial Motion deny the
indigent the right to due process and equal protection under the U.S.
Constitution?

 

Eight:  If it does not in Question 7
above, how can a person place evidence of errors or omissions before the trial
court without having to appeal it first in order to be provided the transcripts
under the Texas Rules of Appellant Procedure 20.1?

 

Nine:  In considering the situation
in the above scenario and questions create; explain how an indigent person can
persuade a trial court of mistakes made in previous hearings if they are denied
transcripts and cannot afford them, when the same court bars tape records as a
standing rule?  Is this not a de facto
denial of access to the courts with an equal footing as the opposing party?








In support of
these issues, Magnuson argues that Rule 145 does not allow for reporter=s records to be
provided to indigent parties for purposes of filing motions for rehearing or
motions for new trial, and the denial of access to the reporter=s record of the
hearings in this case denied him due process, violated his equal protection
rights, and denied him access to the courts. 

While Magnuson
phrases his issues in terms of indigent defendants in general, we consider only
whether the denial of access to the reporter=s record for
purposes of filing a motion for new trial or motion for rehearing violated
Magnuson=s rights, not the
rights of other indigent defendants.[14]  We conclude that we need not determine
whether Magnuson has been denied due process, equal protection, or access to
the courts because Magnuson has not shown any harm.[15]









A party has
several avenues for obtaining a remedy for trial court error.  A party can try to persuade the trial court
to remedy the error by filing a motion for new trial or a motion for rehearing.[16]  In addition, the party can file an appeal and
try to persuade a court of appeals to remedy the alleged error.[17]  








In this case,
Magnuson claims that he could not persuade the trial court of mistakes made or
show the trial court evidence of errors or omissions without having access to
the reporter=s record. 
But Magnuson did have access to the reporter=s record in making
his appeal.  This court has the authority
to remedy error and grant a new trial in the appropriate circumstances.[18]  Thus, if Magnuson wished the trial court to
cure error by granting a new trial, this court could have cured the error with
the same remedy if such remedy was appropriate. 
And although Magnuson appears to assert that there should be some
procedure, other than filing an appeal, for gaining access to the reporter=s record in order
to raise a point of error in the trial court, in this case, Magnuson has not
demonstrated how he was harmed by the absence of such a procedure.  Despite the fact that Magnuson has now been
given access to the reporter=s record, he has
not told this court what arguments he would have made to the trial court or
what evidence of errors or omissions he would have noted in his motion for new
trial or motion for rehearing if he had been able to examine the reporter=s record before
drafting the motions.  Thus, Magnuson has
not shown any error of law that probably caused the rendition of an improper
verdict.[19]








Magnuson could
have also demonstrated harm by showing that the trial court made an error of
law that probably prevented him from properly presenting his case to this court
on appeal.[20]  Under Rule 324(b) of the Texas Rules of Civil
Procedure, in some instances, a complaint must be made as a point in a motion
for new trial as a prerequisite to making the complaint on appeal.[21]  For example, a party complaining about the
factual sufficiency of the evidence supporting a jury finding must raise the
complaint in a motion for new trial.[22]  Magnuson
has not argued, much less demonstrated, that denial of access to the reporter=s record prevented
him raising a Rule 324(b) point in a motion for new trial (and thus prevented
him from raising it on appeal) or that it in any other way prevented him from
properly presenting his case to this court.[23]  We overrule issues seven, eight, and nine.

Finally,
we consider one additional argument raised by Magnuson.  In the arguments section of his brief, he
argues that no written contract signed by the parties exists and that without a
formal written contract, the amount of damages, if any, cannot be
calculated.  This argument does not
clearly relate to any of the issues he raised in the AIssues
Presented@ section of his brief, but we
will consider it.[24]

In
addition to its breach of contract claim, Citibank filed for summary judgment
on its claim on account stated.  The
trial court did not specify whether it granted summary judgment on the breach
of contract claim or on the account stated claim, and on appeal, Magnuson
challenges only the propriety of the summary judgment as to the breach of
contract claim.  We therefore must affirm
the summary judgment on the account stated ground.[25]








Having
affirmed the summary judgment on procedural grounds, we need not address the
merits of Magnuson=s argument.  Nevertheless, in the interest of justice, we
note that the agreement on which an account stated claim is based can be
express or implied, and therefore a plaintiff bringing a claim on an account
stated does not have to produce a written contract to recover on the
claim.  Assuming arguendo that a
past due balance on a credit card can give rise to damages on an account stated
claim, Citibank did not have to produce a written contract to recover on its
claim against Magnuson, as long as it could produce other evidence of the
agreement between the parties sufficient to meet its burden of proof.[26]









Further,
we disagree that Citibank did not provide evidence of a contract and that the
amount of damages cannot be calculated.  AThe
elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting
of the minds, (4) each party=s
consent to the terms, and (5) execution and delivery of the contract with the
intent that it be mutual and binding.@[27]  ADelivery
may be proved by acts or words showing that the parties intended the contract
to become effective.@[28]  A[W]hen
the parties manifest an intent through their actions and words that the
contract become effective, delivery is shown.@[29]  

To its
summary judgment motion, Citibank attached evidence in the form of copies of
billing statements from January 20, 1998, to July 26, 2005.  The statements reflect charges made on the
account; they also reflect payments made. 
Citibank also attached the cardmember agreement (the AAgreement@) for
the account.  The Agreement states that
the cardmember is responsible for all amounts owed on the account and that the
cardmember agrees to pay such amounts according to the terms of the Agreement.  It further provides that it is effective when
the cardmember uses the card.  The
Agreement sets out how the monthly minimum payment is determined and how
finance charges are determined.








Citibank
also attached the application for the credit card account.  The application has the name AKenneth
J. Magnuson@ and an address preprinted on
it.  The address is the same address that
Magnuson provided to this court as his current address.  The application states that it is for a pre-approved
credit line up to $25,000, and it shows a signature and a date.

These
documents establish (1) an offer, (2) an acceptance by Magnuson, (3) a meeting
of the minds, (4) each party=s
consent to the terms, and (5) execution and delivery of the contract with the
intent that it be mutual and binding. 
The terms of the contract are set out in the Agreement, which, as the
Agreement states, Magnuson accepted by using the card.  The billing statements show that he used the
card.  Nothing in the record establishes
that Magnuson disputed any of the terms of the account while using the
card.  Delivery was established by
Magnuson=s use of
the card and by his making payments on the account for the charges shown on his
monthly billing statement.[30]  We overrule Magnuson=s
argument.  

III.  Conclusion

Having
overruled Magnuson=s issues, we affirm the judgment
of the trial court.

LEE ANN DAUPHINOT

JUSTICE








PANEL B:   DAUPHINOT, HOLMAN and WALKER, JJ.

DELIVERED:
February 14, 2008











[1]See Tex. R. App. P.
47.4.





[2]Tex. R. Civ. P. 12 (AA party in a suit or
proceeding pending in a court of this state may, by sworn written motion
stating that he believes the suit or proceeding is being prosecuted or defended
without authority, cause the attorney to be cited to appear before the court
and show his authority to act.A).





[3]Tex. R. Civ. P. 21 (emphasis added).





[4]Denton
County (Tex.) Dist. & Stat. County Cts. Loc. R. 1.11.3.





[5]Petitt v. Laware, 715 S.W.2d 688, 691
(Tex. App.CHouston [1st Dist.] 1986,
writ ref=d n.r.e.) (AThe authorities are clear
that an action taken by the court that results in a final dismissal of
plaintiff=s cause of action without
proper notice involves more than a mere violation of the rules of practice and
procedure; such action will constitute abuse of discretion.@).





[6]See id.





[7]See Tex. R. App. P.
38.1(h) (requiring a brief to contain appropriate citations to authority).





[8]See Tex. R. Civ. P. 21.





[9]See Denton
County (Tex.) Dist. & Stat. County Cts. Loc. R. 2.12 (AFailure of a party
seeking affirmative relief to appear at any scheduled trial or hearing shall
result in dismissal of the case or waiver of the matters presented in the
motion scheduled for hearing.@).   





[10]See Tex. R. App. P. 47.1.  





[11]See Strange v. Cont=l Cas. Co., 126 S.W.3d 676, 678
(Tex. App.CDallas 2004, pet.
denied), cert. denied, 543 U.S. 1076 (2005) (AAn issue on appeal
unsupported by argument or citation to any legal authority presents nothing for
the court to review.@).





[12]See Tex. R. App. P.
38.1(h).





[13]See Tex. R. Civ. P. 145; Tex. R. App. P. 20.1.





[14]See Tex. Ass'n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (holding that Texas courts have no
jurisdiction to render an advisory opinion, that is, an opinion that decides an
abstract question of law without binding the parties); see also Advantage
Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 26 (Tex. App.CHouston [14th Dist.]
2005, no pet.) (holding that an issue asking whether a letter of protection can
ever be a contract sought an advisory opinion and noting that courts may not
issue advisory opinions).





[15]See Tex. R.
App. P. 44.1.





[16]See D/FW Commercial Roofing Co. v.
Mehra, 854 S.W.2d
182, 189 (Tex. AppCDallas 1993, no writ) (AThe purpose of a motion for new
trial is to provide an opportunity for the trial court to cure any errors by
granting a new trial.@); 
OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P., 234
S.W.3d 726, 747 (Tex. App.CDallas 2007, pet. filed) (AThe sole purpose of a motion for
rehearing is to provide the court an opportunity to correct any errors on
issues already presented.@)





[17]See Tex. R. App. P. 25.1.





[18]See Tex. R.
App. P. 43.2(d).





[19]See Tex. R.
App. P. 44.1(a).





[20]See Tex. R.
App. P. 44.1(a)(2).





[21]Tex.
R. Civ. P.
324(b).  





[22]Id. 324(b)(2).  





[23]See Tex. R.
App. P. 44.1.  





[24]See Tex. R. App. P.
38.9.





[25]See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121
(Tex. 1970) (AThe judgment must stand,
since it may have been based on a ground not specifically challenged by the
plaintiff and since there was no general assignment that the trial court erred
in granting summary judgment.@).





[26]See Arnold D. Kamen &
Co. v. Young,
466 S.W.2d 381, 388 (Tex. Civ. App.CDallas 1971, writ ref=d n.r.e.) (AThe essential elements of
an >account stated= are transactions between
the parties [that] give rise to an indebtedness of one to the other; an
agreement, express or implied, between the parties fixing the amount due; and a
promise, express or implied, by the one to be charged, to pay such indebtedness.@); Cent. Nat=l Bank of San Angelo v.
Cox, 96
S.W.2d 746, 748 (Tex. Civ. App.CAustin 1936, writ dism=d) (determining whether
the amounts shown by a company=s books as due to an employee=s wife after his death
constituted a stated account between employer and employee where the books
showed no agreement by the employer as to the correctness of the amount due,
and holding that employer=s payment of various sums
to the employee=s wife over a two-year
period Awas clearly sufficient to
constitute an implied assent to the correctness of said account@ and was conclusive of
the amount still due to the employee=s wife). 





[27]Prime Prods., Inc. v.
S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.CHouston [1st Dist.] 2002, pet. denied).  





[28]Awad Tex. Enters., Inc.
v. Homart Dev. Co., 589 S.W.2d 817, 820 (Tex. Civ. App.CDallas 1979, no
writ).  





[29]Winchek v. Am. Express
Travel Related Servs. Co., 232 S.W.3d 197, 204 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (op. on reh=g).





[30]See id.