COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-465-CV

KENNETH J. MAGNUSON APPELLANT

V.

CITIBANK (SOUTH DAKOTA) N.A. APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Kenneth J. Magnuson
 appeals from a summary judgment awarding Appellee Citibank (South Dakota), N.A. damages
 of $18,815.02, plus $4,327.45 in attorney’s fees
, $1,500 in additional attorney’s fees in the event of an unsuccessful appeal by Magnuson to the court of appeals, and $2,500 in additional attorney’s fees in the event of an unsuccessful appeal by Magnuson to the Texas Supreme Court.  Because we hold that the trial court did not err by granting summary judgment for Citibank, we affirm.

I.  Facts and Procedural History

On June 18, 2004, Citibank sued Magnuson on claims of account stated, breach of contract, and quantum meruit for the unpaid balance on Magnuson’s credit card account after he stopped paying on the account.  Magnuson filed an answer pro se.  On September 20, 2004, Citibank filed a motion for summary judgment.  Magnuson filed a response.  Citibank asked for a hearing by submission, but Magnuson appeared in person on the hearing date.  The trial court denied Citibank’s motion without prejudice and without considering the merits because Citibank did not appear.

On November 7, 2005, Citibank filed a second traditional motion for summary judgment and submitted in support of its motion the affidavit of Crystal Britt, its representative, stating among other things that demand had been made on Magnuson more than thirty days prior to suit.  Citibank also attached copies of the card agreement, Magnuson’s account application, and billing records.  Magnuson filed a verified response but did not attach any evidence in support.  In his response, he argued that the application included with Citibank’s evidence is illegible and therefore no contract exists and that because the cardholder agreement does not contain his signature, the conditions therein are not a part of any alleged agreement between the parties. He also asserted that no contract was signed by Citibank.

Magnuson also filed a motion to show authority under Rule 12 of the Texas Rules of Civil Procedure.
(footnote: 2)  Citibank filed a response, attaching an affidavit of a vice president for Citicorp Credit Services, Inc., in which the vice president avers that Citicorp is the servicer for Citibank, that her duties include supervising attorneys retained to collect debts on Citibank’s behalf, and that Citicorp retained the acting counsel for the proceedings against Magnuson.

Both motions were set for a hearing on February 3, 2006.  Citibank had requested a hearing by submission on its summary judgment motion, and Citibank’s attorney did not appear in person on that date.  The trial court stated that it intended to hold a hearing on the Rule 12 motion and asked Magnuson to offer evidence that Citibank was served with notice of the hearing.  Magnuson did not have such evidence with him at the hearing.  The trial court then offered to waive the in-person hearing and base its ruling on the pleadings then on file.  Magnuson declined the offer and suggested that the trial court swear him in and allow him to testify that he served Citibank with notice.  The trial court instead allowed Magnuson the opportunity to supplement the file with the confirmation and told Magnuson that, once the evidence was submitted, he would consider it.  
Magnuson did not supplement with proof of notice.

The trial court subsequently set a hearing date of June 14, 2006, for the hearing on the motion for summary judgment and on Magnuson’s Rule 12 motion.  Magnuson did not appear, and the trial court orally dismissed the Rule 12 motion for failure to prosecute.  The trial court also granted Citibank’s summary judgment motion in a written order without stating the grounds.  On November 22, 2006, the trial court entered a written order denying Magnuson’s Rule 12 motion.  Magnuson filed a motion for new trial, including a motion for reconsideration on his Rule 12 motion, in which he alleged that by filing an answer to his Rule 12 motion, Citibank made a judicial admission that it had notice of the February 2006 hearing on the motion.  He further argued that the trial court had violated Magnuson’s due process rights by failing to sign orders Magnuson had presented to it after the court granted summary judgment.  Magnuson also alleged that the June 2006 hearing was essentially a rehearing on the Rule 12 motion, that the rehearing was granted without proper motion, and that by granting the rehearing the trial court violated the Texas Code of Judicial Conduct, held Magnuson to a higher standard than opposing counsel, and violated Magnuson’s due process and equal protection rights. 
 The trial court denied the motion on December 20, 2006.

II.  Analysis

Magnuson presents nine issues on appeal.  We begin with Magnuson’s second and third issues, which relate to his Rule 12 motion.  In his second issue, he asks, “If a hearing is scheduled and the [m]ovant appears and the nonmovant fails to appear but files a written answer which is insufficient as a matter of law, has the movant [sic] waived all objections to said hearing?”  In his third issue, he questions whether the trial court has a duty to provide relief for the party that appeared.

In the arguments section of Magnuson’s brief, he states,

Notice was given and received by the opposing counsel.  Trial judge abused discretion in not signing order after CITIBANK failed to appear.  All elements of the requirements of the rule were pleaded.  CITIBANK answered with an affidavit of their representation.  However, the rule requires a hearing in order to allow cross-examination of witnesses as to the authentication and source of the documents.  Without the hearing[,] self-serving affidavits would replace evidentiary standards.  It was not within the trial court[’]s discretion not to hear a motion that invoked a rule that protected the rights of litigants against barratry or frivolous pleadings.  It is the contention of the Appellant that the attorneys acting to represent CITIBANK are actually third party debt [collectors] which would equate to fraud upon the court.

This paragraph constitutes the extent of his argument for these issues in the “Arguments” section of his brief.  

We consider together Magnuson’s contentions that he was entitled to have his motion granted because Citibank did not appear in person on February 3, 2006, and that by failing to appear, Citibank waived its objections to the hearing.  The motion was first set for hearing on February 3, 2006.  On that date, Magnuson was unable to show that Citibank had notice of the hearing.  As the trial court attempted to explain to Magnuson, notice that a motion has been filed is not notice of the setting of a hearing on the motion.  Citibank clearly did know that Magnuson had filed a Rule 12 motion because, as Magnuson correctly points out, Citibank filed a response.  But that does not signify that Citibank had any notice of when the 
hearing
 on the motion would be held.  

Rule 21 of the Texas Rules of Civil Procedure provides that 

[a]n application to the court for an order and 
notice of any hearing thereon
, not presented during a hearing or trial, shall be served upon all other parties not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court.
(footnote: 3)

The local rules of the trial court provide that “[u]pon receiving the date and time of hearing [as scheduled by the court coordinator], the moving party shall immediately notify all other parties in writing as to the date, time, and subject matter of the hearing.”
(footnote: 4) 

A trial court’s final dismissal of a plaintiff's cause of action without proper notice is an abuse of discretion.
(footnote: 5)  Thus, the trial court did not abuse its discretion by requiring that Magnuson show proof of service on Citibank before granting his motion and striking Citibank’s pleadings.  It is irrelevant for purposes of Magnuson’s issue whether Magnuson 
later
 established that he had served Citibank with notice of the hearing date because 
on the date of the hearing
, the time at which Magnuson alleges the trial court erred, Magnuson offered no evidence that Citibank had notice of the hearing.  Without proof of service on Citibank, Magnuson was not entitled to any sort of default ruling
 on his motion, and Citibank did not waive objections to the hearing.
(footnote: 6)
 Magnuson makes a related argument in the “Conclusion” section of his brief.  There he contends that the trial court created a heightened pleading standard for him, a nonattorney, when the trial court failed to grant his Rule 12 motion on February 3, 2006, after Citibank did not appear at the hearing.  He argues that this heightened standard violates due process and equal protection. 

Magnuson cites no authority for this argument.
(footnote: 7)  Further, as we discussed above (and as the trial court attempted to explain to him on that date), there is a difference between having notice that a motion has been filed with the trial court and having notice of the date of a hearing on that motion.  The trial court did not create a heightened pleadings standard by requiring Magnuson to offer such evidence; rather, the trial court applied the Texas Rules of Civil Procedure.
(footnote: 8)  

We note that the trial court set a hearing date for June 14, 2006, and that Magnuson did not appear.  It was Magnuson’s responsibility to diligently pursue his motion, and by failing to show up at the hearing, he faced dismissal of his motion.
(footnote: 9)  
Accordingly, the trial court dismissed the motion for want of prosecution, rather than ruling on the merits either with or without an oral hearing, and Magnuson does not challenge the propriety of that dismissal on appeal.  Thus, the question of whether Rule 12 requires an oral hearing before a ruling on the merits may be issued is irrelevant to this appeal, and we do not consider it.
(footnote: 10)  
Accordingly, we overrule issues two and three.

In his first
 issue, Magnuson asks, “
May a litigant file a second Motion for Summary Judgment without any change in their pleadings?” In issue four, Magnuson asks, does “the opposing party have the authority to reset a hearing or in effect have a rehearing of a motion filed by opposing counsel without filing a motion to rehear?”  
Issue five relates to the trial court’s grant of Citibank’s second motion for summary judgment and asks, “Does any court have the ability to rule in favor of a summary judgment motion that had been previously denied?
”  Issue six questions whether a trial court has discretion to grant a summary judgment motion if the nonmoving party fails to appear on the date set for the summary judgment hearing.  
Magnuson makes no argument in support of these issues; therefore, they present nothing for this court to review.
(footnote: 11)  Accordingly, we overrule issues one, four, five, and six as inadequately briefed.
(footnote: 12)
 Issues seven through nine relate to Magnuson’s access to reporter’s records under Rule 145 of the Texas Rules of Civil Procedure and Rule 20.1 of the Texas Rules of Appellate Procedure for the purpose of proving a motion for new trial.
(footnote: 13)  He states in his brief that he filed a motion for new trial, and Citibank’s counsel argued in response that there was no hearing on the Rule 12 motion “and that no transcript has been provided to demonstrate that a hearing had in fact occurred.”  Magnuson then notes that he is indigent and that he filed “the necessary documents” under Rule 145 and Rule 20.1 to prove his indigency, and that he had made a request for “the transcript to provide evidence of the hearing and the opposing parties[‘] absences from that hearing,” which the trial court denied.  With that preface, Magnuson asks,

Seven
:  Does the lack of access to an indigent to hearing transcripts in rehearings or in a New Trial Motion deny the indigent the right to due process and equal protection under the U.S. Constitution?

Eight
:  If it does not in Question 7 above, how can a person place evidence of errors or omissions before the trial court without having to appeal it first in order to be provided the transcripts under the Texas Rules of Appellant Procedure 20.1?

Nine
:  In considering the situation in the above scenario and questions create; explain how an indigent person can persuade a trial court of mistakes made in previous hearings if they are denied transcripts and cannot afford them, when the same court bars tape records as a standing rule?  Is this not a de facto denial of access to the courts with an equal footing as the opposing party?

In support of these issues, Magnuson argues that Rule 145 does not allow for reporter’s records to be provided to indigent parties for purposes of filing motions for rehearing or motions for new trial, and the denial of access to the reporter’s record of the hearings in this case denied him due process, violated his equal protection rights, and denied him access to the courts. 

While Magnuson phrases his issues in terms of indigent defendants in general, we consider only whether the denial of access to the reporter’s record for purposes of filing a motion for new trial or motion for rehearing violated Magnuson’s rights, not the rights of other indigent defendants.
(footnote: 14)  We conclude that we need not determine whether Magnuson has been denied due process, equal protection, or access to the courts because Magnuson has not shown any harm.
(footnote: 15) 

A party has several avenues for obtaining a remedy for trial court error.  A party can try to persuade the trial court to remedy the error by filing a motion for new trial or a motion for rehearing.
(footnote: 16)  In addition, the party can file an appeal and try to persuade a court of appeals to remedy the alleged error.
(footnote: 17)  

In this case, Magnuson claims that he could not persuade the trial court of mistakes made or show the trial court evidence of errors or omissions without having access to the reporter’s record.  But Magnuson did have access to the reporter’s record in making his appeal.  This court has the authority to remedy error and grant a new trial in the appropriate circumstances.
(footnote: 18)  Thus, if Magnuson wished the trial court to cure error by granting a new trial, this court could have cured the error with the same remedy if such remedy was appropriate.  And although Magnuson appears to assert that there should be some procedure, other than filing an appeal, for gaining access to the reporter’s record in order to raise a point of error in the trial court, in this case, Magnuson has not demonstrated how he was harmed by the absence of such a procedure.  Despite the fact that Magnuson has now been given access to the reporter’s record, he has not told this court what arguments he would have made to the trial court or what evidence of errors or omissions he would have noted in his motion for new trial or motion for rehearing if he had been able to examine the reporter’s record before drafting the motions.  Thus, Magnuson has not shown any error of law that probably caused the rendition of an improper verdict.
(footnote: 19)
 Magnuson could have also demonstrated harm by showing that the trial court made an error of law that probably prevented him from properly presenting his case to this court on appeal.
(footnote: 20)  Under Rule 324(b) of the Texas Rules of Civil Procedure, in some instances, a complaint must be made as a point in a motion for new trial as a prerequisite to making the complaint on appeal.
(footnote: 21)  
For example, a party complaining about the factual sufficiency of the evidence supporting a jury finding must raise the complaint in a motion for new trial.
(footnote: 22)  
Magnuson has not argued, much less demonstrated, that denial of access to the reporter’s record prevented him raising a Rule 324(b) point in a motion for new trial (and thus prevented him from raising it on appeal) or that it in any other way prevented him from properly presenting his case to this court.
(footnote: 23)  We overrule issues seven, eight, and nine.

Finally, we consider one additional argument raised by Magnuson.  In the arguments section of his brief, he argues that no written contract signed by the parties exists and that without a formal written contract, the amount of damages, if any, cannot be calculated.  This argument does not clearly relate to any of the issues he raised in the “Issues Presented” section of his brief, but we will consider it.
(footnote: 24)
 In addition to its breach of contract claim, Citibank filed for summary judgment on its claim on account stated.  The trial court did not specify whether it granted summary judgment on the breach of contract claim or on the account stated claim, and on appeal, Magnuson challenges only the propriety of the summary judgment as to the breach of contract claim.  We therefore must affirm the summary judgment on the account stated ground.
(footnote: 25)
 Having affirmed the summary judgment on procedural grounds, we need not address the merits of Magnuson’s argument.  Nevertheless, in the interest of justice, we note that the agreement on which an account stated claim is based can be express or implied, and therefore a plaintiff bringing a claim on an account stated does not have to produce a written contract to recover on the claim.  Assuming 
arguendo
 that a past due balance on a credit card can give rise to damages on an account stated claim, Citibank did not have to produce a written contract to recover on its claim against Magnuson, as long as it could produce other evidence of the agreement between the parties sufficient to meet its burden of proof.
(footnote: 26) 

Further, we disagree that Citibank did not provide evidence of a contract and that the amount of damages cannot be calculated.  “The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party’s consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.”
(footnote: 27) 
 
“Delivery may be proved by acts or words showing that the parties intended the contract to become effective.”
(footnote: 28)  
“[W]hen the parties manifest an intent through their actions and words that the contract become effective, delivery is shown.”
(footnote: 29)  

To its summary judgment motion, Citibank attached evidence in the form of copies of billing statements from January 20, 1998, to July 26, 2005.  The statements reflect charges made on the account; they also reflect payments made.  Citibank also attached the cardmember agreement (the “Agreement”) for the account.  The Agreement states that the cardmember is responsible for all amounts owed on the account and that the cardmember agrees to pay such amounts according to the terms of the Agreement.  It further provides that it is effective when the cardmember uses the card.  The Agreement sets out how the monthly minimum payment is determined and how finance charges are determined.

Citibank also attached the application for the credit card account.  The application has the name “Kenneth J. Magnuson” and an address preprinted on it.  The address is the same address that Magnuson provided to this court as his current address.  The application states that it is for a pre-approved credit line up to $25,000, and it shows a signature and a date.

These documents establish (1) an offer, (2) an acceptance by Magnuson, (3) a meeting of the minds, (4) each party’s consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.  The terms of the contract are set out in the Agreement, which, as the Agreement states, Magnuson accepted by using the card.  The billing statements show that he used the card.  Nothing in the record establishes that Magnuson disputed any of the terms of the account while using the card.  Delivery was established by Magnuson’s use of the card and by his making payments on the account for the charges shown on his monthly billing statement.
(footnote: 30)  
We overrule Magnuson’s argument. 

III.  Conclusion

Having overruled Magnuson’s issues, we affirm the judgment of the trial court.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN and WALKER, JJ.

DELIVERED: 
February 14, 2008

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Tex. R. Civ. P.
 12 (“
A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act.“).

3:
Tex. R. Civ. P.
 21 (emphasis added).

4:
Denton County (Tex.) Dist. & Stat. County Cts. Loc. 
R. 1.11.3.

5:
Petitt v. Laware
, 715 S.W.2d 688, 691 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.)
 (“The authorities are clear that an action taken by the court that results in a final dismissal of plaintiff’
s cause of action without proper notice involves more than a mere violation of the rules of practice and procedure; such action will constitute abuse of discretion.”)
.

6:
See id.

7:
See 
Tex. R. App. P.
 38.1(h) (requiring a brief to contain appropriate citations to authority).

8:
See
 
Tex. R. Civ. P.
 21.

9:
See 
Denton County (Tex.) Dist. & Stat. County Cts. Loc. 
R. 2.12 (“Failure of a party seeking affirmative relief to appear at any scheduled trial or hearing shall result in dismissal of the case or waiver of the matters presented in the motion scheduled for hearing.”).   

10:
See
 
Tex. R. App. P.
 47.1.  

11:
See Strange v. Cont’l Cas. Co.
, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied), 
cert. denied
, 543 U.S. 1076 (2005) (“An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review.”).

12:
See 
Tex. R. App. P.
 38.1(h).

13:
See
 
Tex. R. Civ. P.
 145; 
Tex. R. App. P.
 20.1.

14:
See Tex. Ass'n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 444 (Tex. 1993) (holding that Texas courts have no jurisdiction to render an advisory opinion, that is, an opinion that decides an abstract question of law without binding the parties); 
see also Advantage Physical Therapy, Inc. v. Cruse
, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that an issue asking whether a letter of protection can ever be a contract sought an advisory opinion and noting that courts may not issue advisory opinions)
.

15:
See 
Tex. R. App. P.
 44.1.

16:
See D/FW Commercial Roofing Co. v. Mehra
, 854 S.W.2d 182, 189 (Tex. App—Dallas 1993, no writ) (
“
The purpose of a motion for new trial is to provide an opportunity for the trial court to cure any errors by granting a new trial.”); 
 
OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.
, 234 S.W.3d 726, 747 (Tex. App.—Dallas 2007, pet. filed) (“The sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented.”)

17:
See
 
Tex. R. App. P.
 25.1.

18:
See 
Tex. R. App. P.
 43.2(d).

19:
See 
Tex. R. App. P.
 44.1(a).

20:
See 
Tex. R. App. P.
 44.1(a)(2).

21:
Tex. R. Civ. P.
 324(b).  

22:
Id
. 324(b)(2).  

23:
See
 Tex. R. App. P.
 44.1.  

24:
See 
Tex. R. App. P.
 38.9.

25:
See 
Malooly Bros., Inc. v. Napier
, 461 S.W.2d 119, 121 (Tex. 1970) (“The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff and since there was no general assignment that the trial court erred in granting summary judgment.”).

26:
See Arnold D. Kamen & Co. v. Young
, 466 S.W.2d 381, 388 (Tex. Civ. App.—Dallas 1971, writ ref’d n.r.e.) (“The essential elements of an ‘account stated’ are transactions between the parties [that] give rise to an indebtedness of one to the other; an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness.”); 
Cent. Nat’l Bank of San Angelo v. Cox
, 96 S.W.2d 746, 748 (Tex. Civ. App.—Austin 1936, writ dism’d) (determining whether the amounts shown by a company’s books as due to an employee’s wife after his death constituted a stated account between employer and employee where the books showed no agreement by the employer as to the correctness of the amount due, and holding that employer’s payment of various sums to the employee’s wife over a two-year period “was clearly sufficient to constitute an implied assent to the correctness of said account” and was conclusive of the amount still due to the employee’s wife). 

27:
Prime Prods., Inc. v. S.S.I. Plastics, Inc.
, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  

28:
Awad Tex. Enters., Inc. v. Homart Dev. Co.
, 589 S.W.2d 817, 820 (Tex. Civ. App.—Dallas 1979, no writ).  

29:
Winchek v. Am. Express Travel Related Servs. Co.
, 232 S.W.3d 197, 204
 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh’g).

30:
See id.